THE CRAWFORD COUNTY PRINTING AND PUBLISHING COMPANY, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 22369, 33509.   Promulgated February 29, 1952.

*Dana Latham, Esq.*, and *Austin H. Peck, Jr., Esq.*, for the petitioners.
*Earl C. Crouter, Esq.*, for the respondent.

---

[1] This petitioner was dissolved consequent on merger on or about March 31, 1950. In this report the term "petitioner" is used to indicate either the original corporation or the dissolved corporation, dependent on the year involved.

OPINION.

VAN FOSSAN, *Judge:* The ultimate findings of fact appearing above toll the death knell of respondent's determination that petitioner was liable for additional surtax under section 102, I. R. C.[2]

Almost, if not quite, from the beginning of his newspaper career, R. C. Hoiles was devoted to a policy of building a chain of newspapers to serve as an outlet for his economic and governmental beliefs. He held very pronounced views and concepts of the respective rights of the individual and the state as reflected in their day-to-day life. In his advocacy of his theories and principles he was a tireless zealot. All of his publications reflected his purpose and devotion to certain fixed concepts. Each step in the acquisition of his chain of newspapers was integrated with and dictated by his addiction to such principles.

There is no contention, and none could fairly be made, that petitioner was organized for the purpose proscribed by section 102, I. R. C. Nor was petitioner a mere holding company. It was an operating company actually engaged in the newspaper business.

The question is—was petitioner in any of the taxable years availed of for the purpose of avoiding the impingement of taxes on its share-

---

[2] SEC. 102. SURTAX ON CORPORATIONS IMPROPERLY ACCUMULATING SURPLUS.

(a) IMPOSITION OF TAX.—There shall be levied, collected, and paid for each taxable year * *˙ * upon the net income of every corporation * * * if such corporation, however created or organized, is formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders or the shareholders of any other corporation, through the medium of permitting earnings or profits to accumulate instead of being divided or distributed, a surtax equal to the sum of the following:

  27½ per centum of the amount of the undistributed section 102 net income not in excess of $100,000, plus 38½ per centum of the undistributed section 102 net income in excess of $100,000.

  *      *      *      *      *      *      *

(c) EVIDENCE DETERMINATIVE OF PURPOSE.—The fact that the earnings or profits of a corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid surtax upon shareholders unless the corporation by the clear preponderance of the evidence shall prove to the contrary.

holders by accumulating a greater surplus than was necessary for the reasonable needs of its business?

Determination of the reasonable needs of its business is, in the first place, a task for the officers and directors of the corporation. What is reasonable in one situation may be unreasonable in a different context of facts. We should be hesitant to attribute a sinister or ulterior motive to the corporation unless such a factual situation clearly appears. The law contemplates that any legitimate business may grow if legitimate means be employed. There are various and sundry ways, all natively legitimate, by which a business may acquire the means of growth and finance its proper expansion. It can issue capital stock or other securities. It may resort to bank loans. Yet again, it may plow its earnings back into the business for immediate uses. Still another method, equally legitimate, absent an ulterior purpose, is to accumulate its earnings until the expansion can be timely undertaken. The abuse of this last method was the genesis of section 102, I. R. C., and its forbears. This method was employed by petitioner. The question is—was it legitimately so employed?

Petitioner's purpose in the accumulation of earnings was well understood and persistently followed. At all times it was alert to an opportunity to acquire an interest in a small-city newspaper. With this end in view it invested its surplus funds in liquid or ready salable securities, ad interim investments, so to speak. The record shows the successful pursuit of petitioner's policy and its expansion. The actual acquisition of newspapers, or substantial interests therein, some in the taxable years, effectively refute and fully and sufficiently answer the contention of respondent that there was an unreasonable accumulation of funds dictated by a purpose to lessen the tax burden of its stockholders. In pursuit of this policy, not only did petitioner invest all of its surplus funds periodically in carefully planned expansion, in some instances it borrowed further funds to accomplish such expansion. It is clearly proved that the earnings and profits which petitioner accumulated were not beyond the reasonable needs of its business.

Respondent calls attention, *inter alia*, to the fact that petitioner owned only a minority interest in certain of the other companies and contends that this fact requires a ruling in respondent's favor under Regulations 111, section 29.102–3, which provides:

* * * The business of one corporation may not be regarded as including the business of another unless the other corporation is a mere instrumentality of the first; to establish this it is ordinarily essential that the first corporation own all or substantially all of the stock of the second.

Respondent cites *Stanton Corporation*, 44 B. T. A. 56, in support of his contention. The *Stanton* case was but little like the present

case. It was there held that the corporation, from the outset, was a mere holding or investment corporation; was formed for the purpose of avoiding surtax on the shareholders; permitted its profits to be accumulated beyond the reasonable needs of its business.; and was availed of for the proscribed purpose. The record clearly supported all of such findings.

No such findings are possible on the record in the instant case and clearly the *Stanton* case is not controlling. Respondent cites no other authority for the above proposal, and we know of none. We are unwilling to give such a sweeping and conclusive effect to the regulation cited. The petitioner was planning to use its surplus solely for its own expansion and growth, not for the growth of any of its partially owned companies. There is no claim of an intention to devote such surplus to any other use than the development of the petitioner and the furthering of its own purposes. Section 29.102–3 of Regulations 111 was plainly not aimed at companies such as petitioner, nor at surplus accumulated, held, and purposed for use as here. Had petitioner accumulated its surplus to further the business of the companies in which it owned stock, rather than its own business, or had it made such a claim, we would have a different situation and a different problem.

No useful purpose would be served by further discussion. On this, the only issue submitted for determination, we find in favor of the petitioner.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

Opper, *J.*, dissents.